----------------------------------------------------------X

LORRAYNE MAVROMATIS,                                    Civil Action No. 4:26-cv-59


Plaintiff,


v.


MRBEASTYOUTUBE, LLC and
GAMECHANGER 24/7, LLC,


Defendants.

----------------------------------------------------------X

## COMPLAINT
## JURY TRIAL DEMAND

1. This is an action brought by LORRAYNE MAVROMATIS ("Plaintiff") against MRBEASTYOUTUBE, LLC and GAMECHANGER 24/7, LLC (together referred to as "Defendants" or "MrBeast") for Defendants' willful violations of the Family and Medical Leave Act ("FMLA"), wrongful discharge of Plaintiff in violation of North Carolina public policy, N.C. Gen. Stat. §§ 143-422.2, and intentional infliction of emotional distress under North Carolina common law.

2. Due to MrBeast's willful violations of the FMLA and intentional violations of North Carolina state law, Plaintiff seeks lost wages, lost benefits, reinstatement, front pay in lieu of reinstatement, liquidated damages, compensatory damages, punitive damages, injunctive relief, pre-and post-judgment interest, and reasonable attorneys' fees and costs.

3. "Relevant Times" or "Relevant Period" includes any time during the period of Plaintiff's employment with MrBeast, from August 22, 2022 until November 6, 2025.

## I.  INTRODUCTION—IT'S A BOYS' WORLD AT BEAST INDUSTRIES

4.  James "Jimmy" Donaldson (a.k.a. MrBeast and hereinafter "Donaldson" or "Jimmy") is a social media influencer, widely popular with males in the 14 to 24 year-old age group, who founded media production companies MrBeastYouTube, LLC and GameChanger 24/7, LLC which employed Plaintiff, as well as other related businesses including BeastGames, MrBeast Burger, Lunchly, Feastables, Step, and ViewStats, which operate under the umbrella of Beast Industries. While Donaldson is now involved in a variety of businesses from tech apps to restaurants, he gained fame by producing high-budget, elaborate challenges and stunts like giving away islands and millions of dollars in prize money.

5.  Donaldson got his start by posting videos of himself playing video games on YouTube at the age 13 under the handle "MrBeast6000," which gained a cult-like YouTube fanbase and following. As his MrBeast6000 persona rapidly grew to tens of thousands, in 2016, Donaldson dropped out of college at the age of 18 to grow MrBeast full-time. He hired four childhood friends to work on productions and his mother (Susan "Sue" Parisher *nee* Donaldson) to handle MrBeast's administrative matters.

6.  Over the last decade, MrBeast and related entities ("Beast Industries") have expanded exponentially: its YouTube presence grew from 30,000 subscribers to over 450 million; expansion of businesses including online shops, apps, and brick-and-mortar stores; production of multi-series streaming broadcasts; and acquisition of elite business partnerships showcased in primetime Super Bowl ads and the Oscars.

7.  Together, MrBeast and Beast Industries employ over 500 employees.

8.      Notwithstanding the immense changes seen outwardly by the public—from home-filmed YouTube videos to today's media empire—internally, MrBeast has operated like a start-up.

9.      Upon information and belief, during Plaintiff's employment, MrBeast did not have an Employee Handbook with standard employment policies and practices. Instead, MrBeast distributed a handbook to employees titled, "How to Succeed In MrBeast Production" that included sections such as "It's okay for the boys to be childish" and states, "[i]f talent wants to draw a dick on the white board in the video or do something stupid, let them."[1] The handbook states, "[D]o everything you can to empower the boys when filming."[2] MrBeast directs employees to go to great lengths to get results and that there are no excuses to not getting the job done. The handbook tells employees, "No Does Not Mean No"[3] and "The Amount of hours you work is irrelevant."[4]

10.      MrBeast's failure to implement standard employment guidelines and polices as its number of followers, profits, and employees soared resulted in Plaintiff, as well as other female employees, to suffer from violations of the most basic employment laws.

11.      Plaintiff was hired by MrBeast in August 2022.

12.      Plaintiff was a rising star promoted twice within her first year of employment, but after complaining about a workplace that suffered from a lack of basic employment protections in November 2023, she was subjected to multiple adverse employment actions including a negative transfer, demotion, and termination.

---

[1] "How to Succeed In MrBeast Production", YouTube, Rosanna Pansino, The REAL MrBeast . . . (Leaked Document), https://www.youtube.com/watch?v=U2aYO4c3AKw, p. 34 (Aug. 13, 2024) (accessed on Feb. 16, 2026).
[2] *Id.*
[3] *Id.* at 19.
[4] *Id.* at 4.

3

13. During her employment, Plaintiff herself experienced and observed other female employees be subjected to sexual harassment that was both condoned and/or perpetuated by their supervisors. For example, the Company's former CEO James Warren ("Warren") both subjected Plaintiff to sexual harassment (making her meet him in his home for one-on-one meetings while commenting on the way she looked in her clothes) and dismissed her complaint about a male client's unwelcome advances toward her as nothing (telling her that she should be honored that the client was hitting on her). When she asked why Donaldson would not work with her on certain projects, Warren told her that she is a beautiful woman and her appearance had a certain sexual effect on Jimmy.

14. Plaintiff was treated differently than her male counterpart. Plaintiff was told to leave an otherwise all-male meetings by Donaldson. She was told by a male colleague to "shut up" or "stop talking" when she voiced her opinion at a staff meeting with employees she supervised. Donaldson said he would only participate in her video shoot if she brought him a beer—a task meant to demean her as she rushed around the production site in search of a beer in front of the production team when it was known Donaldson didn't really drink, and he indeed did not drink the beer.

15. Executives' demeaning treatment towards women was publicly displayed at MrBeast headquarters when male executives laughed and made jokes at the office about female contestants of BeastGames who complained they did not have access to feminine hygiene products and clean underwear while participating in the show.

16. When Plaintiff complained about the sexual harassment and the hostile environment she and other women were experiencing to MrBeast's Head of Human Resources, who at the time was Parisher, Plaintiff was told that her claims were "unsubstantiated," and she

4

was promptly demoted and transferred to an obscure role known by MrBeast employees as the division where "careers go to die." MrBeast terminated Plaintiff less than three weeks after she returned from FMLA and pregnancy-related leave telling her that she was "too high caliber" for the role she was demoted into after formally complaining about sexual harassment and the hostile work environment at MrBeast.

17. On or near the date of Plaintiff's termination, MrBeast posted a job opening for a Social Media Content Manager. MrBeast did not offer Plaintiff this Social Media Content Manager role or even an opportunity to apply for the position. Instead, MrBeast offered her a severance agreement with a release of all employment claims and strict confidentiality. Human Resources and her manager said if she signed the severance agreement, they would give her an additional month of health insurance that covered herself and baby. MrBeast filled the Social Media Content Manager position with a male in early 2026.

18. MrBeast's lawyers recommended MrBeast implement standard employment practices in a letter dated November 1, 2024.[5] Notwithstanding, MrBeast never sent Plaintiff information about her FMLA rights when she informed her managing supervisor in early 2025 that she would need to take maternity leave. Nor did MrBeast managers or Human Resources seem aware that requiring Plaintiff to work during her FMLA-qualifying leave in 2025 was a violation of the law. In addition, MrBeast apparently saw no problem with firing Plaintiff, a female

---

[5] *See* X @MrBeast at https://x.com/MrBeast/status/1852410203486183777 (post on MrBeast social media account of letter authored by MrBeast's lawyer to Board of Directors following investigation into allegations that included sexual misconduct) (accessed April 15, 2026); *see also* New York Post, "MrBeast internal investigation finds no evidence of grooming, but 'frat boy locker room behavior' discovery leads to firings", https://nypost.com/2024/11/01/entertainment/mrbeast-investigation-finds-no-evidence-of-grooming-harassment-discovery-causes-firings/ (accessed April 15, 2026).

employee with no performance issues who had successfully performed roles at MrBeast, within a few weeks of her return from maternity leave and replacing her with a man.

## II.     JURISDICTION AND VENUE

19.     This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*., because the claims arise under the laws of the United States.

20.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims, including Plaintiff's North Carolina state law claims for intentional infliction of emotional distress and wrongful termination in violation of public policy, arising from a common nucleus of operative facts such that they form part of the same case or controversy.

21.     At all Relevant Times, Defendants were, and are, "employers" within the definition of FMLA, 29 U.S.C. § 2611(4)(A), on the basis that they employ more than 50 employees.

22.     At all Relevant Times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendants employed Plaintiff for more than 12 months, and Plaintiff performed more than 1,250 hours of service for Defendants.

23.     At all Relevant Times to this action, Defendants possessed and exercised the power and authority to direct, control, and supervise the work performed by Plaintiff.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants maintain offices and conduct substantial business in this district, specifically in Greenville, North Carolina at 740 Greenville Blvd SE, STE 400-163, Greenville, NC 27858,

25.     Venue is also proper in this judicial district because the unlawful employment practices alleged in this Complaint occurred within this judicial district.

6

### III. ADMINISTRATIVE REQUIREMENTS

26. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 29, 2025, within 180 days of the last discriminatory act (termination on November 6, 2025), alleging discrimination on the basis of sex, pregnancy, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*

27. The EEOC has not yet issued a Notice of Right to Sue letter to Plaintiff, and thus Plaintiff's Title VII claims are not included in this Complaint; however, Plaintiff will seek to amend the Complaint to add her Title VII discrimination claims as soon as practicable after the EEOC's Notice of Right to Sue is issued.

28. Plaintiff's claims under the FMLA and North Carolina state law do not require exhaustion of administrative remedies.

### IV. PARTIES

29. Plaintiff is a former employee of Defendants who resides in Greenville, North Carolina.

30. Plaintiff's gender is female.

31. During Relevant Times, Plaintiff was an "employee" of Defendants within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(2) and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. §§ 143-422.2.

32. Defendant MrBeastYouTube, LLC ("MrBeastYouTube") is a limited liability company organized and existing under the laws of North Carolina, maintaining its principal place of business at 740 Greenville Blvd SE, STE 400-163, Greenville, NC 27858.

7

33. During Relevant Times, MrBeastYouTube is an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A) and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.

34. Defendant GameChanger247, LLC ("GameChanger") is a limited liability company organized and existing under the laws of North Carolina, maintaining its principal place of business in North Carolina, maintaining its principal place of business at 740 Greenville Blvd SE, STE 400-163, Greenville, NC 27858.

35. During Relevant Times, GameChanger is an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A) and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.

36. MrBeastYouTube and GameChanger operate as a single integrated enterprise and joint employers with respect to Plaintiff's employment. GameChanger operates the merchandise division of the MrBeast enterprise, while MrBeastYouTube operates the video production divisions. Despite Plaintiff transfer to GameChanger's merchandise operations in January 2024, MrBeastYouTube continued to maintain Plaintiff on its payroll, issue her paychecks, and provide her employee benefits throughout the remainder of her employment until her termination on November 6, 2025.

37. MrBeastYouTube and GameChanger share officers and have common ownership, management, and control; maintain interrelated operations and offices; share employees and resources; and exercise centralized control over labor relations and personnel decisions.

38. At all Relevant Times, Defendants maintained operations in Greenville, North Carolina.

39. At all Relevant Times, Defendants have employed more than 50 employees within 75 miles of Plaintiff's worksite in Greenville, North Carolina.

40. Defendants are engaged in an industry affecting commerce within the meaning of FMLA through their production and distribution of digital media content, merchandise, and related products and services in interstate commerce.

41. Defendants jointly employed Plaintiff by employing or acting in the interest of the employer towards Plaintiff directly or indirectly, jointly or severally, including, without limitation, by controlling and directing the terms of employment and compensation and by suffering Plaintiff to work.

## V. FACTUAL ALLEGATIONS

### Plaintiff's Employment with MrBeast

42. Plaintiff was hired by MrBeast on August 22, 2022 as Head of Instagram.

43. As Head of Instagram, Plaintiff was paid an annual salary of $100,000. In approximately June 2023, Plaintiff was promoted to Head of Creative, and her annual salary was increased to $120,000. Shortly afterwards, Plaintiff was promoted again and her salary increased to $250,000.

44. Between June 2023 and January 2024, Plaintiff oversaw operations for MrBeast's Verticals division, guiding projects from initial concept to completion. She managed a team of approximately 20 employees and a monthly budget of roughly $500,000.

45. During her tenure with Verticals, Verticals executed highly successful social media campaigns and content generating millions of views and substantial revenue for MrBeast.

### It's Okay For The Boys To Be Childish

46. While Plaintiff approached her work in a professional manner, her professionalism was met with a boys' club environment at MrBeast where MrBeast's policy included, "it's okay

9

for the boys to be childish" and it's okay for the boys to "draw a dick on the white board . . . ." In this male-centric workplace, Plaintiff, one of the few women in a high-level role, was excluded from otherwise all-male meetings, demeaned in front of colleagues, harassed, and suffered from males be given preferential treatment in employment decisions.

47. During her employment, Plaintiff, along with other female employees, complained about unwelcome and uncomfortable treatment from males that was ignored by their supervisors.

48. For example, Plaintiff and other female employees of MrBeast complained to their male supervisor about a producer's unwelcome comments about their appearance and close touching. However, their male supervisor repeatedly ignored their complaints. Plaintiff also complained when a wealthy male client, who Warren required her to mentor, made romantic overtures to her that she was uncomfortable with and colleagues had begun falsely claiming Plaintiff was sexually involved with the client. Plaintiff asked Warren (her direct supervisor at the time) to intervene with the client so a professional relationship could be maintained. However, Warren dismissed her concerns, denied her request to intervene, and said she should be honored that a billionaire was "hitting on her."

49. It became clear to Plaintiff that sexually inappropriate comments were acceptable at MrBeast and that complaining could adversely affect her employment. For example, Warren held one-on-one work meetings with Plaintiff at his home, in an upstairs, dimly lit room, instead of the corporate office that was located minutes from his home. During these meetings, Warren himself made inappropriate comments about Plaintiff's appearance. On one occasion, Plaintiff asked a female colleague to go with her to Warren's home office meeting because she felt uncomfortable with the intimate setting of these meetings, but Plaintiff also began to question her own judgment after her complaints were dismissed and she was told by male executives that she

10

was overreacting. Also, when Plaintiff asked Warren why Jimmy would not meet with her regarding certain projects, Warren told Plaintiff, "Jimmy gets really awkward around beautiful women. Let's just say that when you're around and he goes to the restroom, he's not actually using the restroom." Following Warren's comment, Plaintiff began to wear baggy clothes and baseball caps, so her looks would not potentially negatively impact her employment.

50. Plaintiff was demeaned in other ways while working at MrBeast because of her sex:

- She was told to leave otherwise all male meetings with Donaldson.

- She was asked by Donaldson to fetch a beer before he would do a video shoot—something she never witnessed him ask of a male employee on the many shoots in which she participated. When she brought him the beer, Jimmy took one swing and tossed it on the ground.

- She was told by a male colleague to "shut up" and "stop talking" during a staff meeting when she raised a question.

51. Plaintiff discussed the continuous hostile and sometimes violent behavior exhibited by a male colleague to Warren. Warren told Plaintiff he thought she was stronger. Another executive with whom Plaintiff discussed this matter, which she described to him as toxic, said to Plaintiff—this is just how leaders talk at MrBeast. The executive further said, "What can't happen is you going to your uppers to complain. *That's toxic*. My team did that – they're gone." Plaintiff wrote this statement on a note card so she could remind herself what could happen if she complained and appeared weak.

### **Formal Complaint**

52. Reaching a tipping point, in November 2023, Plaintiff made a formal complaint detailing the sexually inappropriate encounters and harassment, and demeaning and hostile work

environment she and other female employees had been living and experiencing working at MrBeast to Parisher who served as Head of Human Resources at the time.

53. In November 2023, MrBeast did not have a method or process for employees to report sensitive matters like harassment or discrimination anonymously or to a third-party. Thus, Plaintiff had to tell Parisher of the sexually harassing, inappropriate, and demeaning treatment she had suffered and witnessed that included acts by her nephew, Warren, and son, Donaldson.

54. Parisher informed Plaintiff her complaint would be thoroughly investigated, and that she (Parisher) would "take care of the matter."

**Retaliatory Demotion and Transfer**

55. The matter was taken care of, on January 23, 2024, when Plaintiff was demoted and transferred to Social Media Manager for MrBeast's Merchandise Division (MrBeastStore) after MrBeast's investigation found Plaintiff's claims "unsubstantiated."

56. Plaintiff's transfer from COO for Verticals to Social Media Manager of Merchandise was an employment action taken approximately two months after her complaints to Parisher and was effectuated or delivered on the same day Plaintiff was informed of the results of MrBeast's investigation of her complaints.

57. Plaintiff's transfer to Social Media Manager for Merchandise was done in response to Plaintiff's workplace complaints.

58. Plaintiff's role as COO for Verticals from June 2023 through January 2024 was an executive level position at MrBeast.

59. As COO for Verticals, Plaintiff supervised a team of approximately 20 employees.

60. As COO for Verticals, Plaintiff regularly interacted with executives and producers, directly reported to the CEO of MrBeast, and had a private office at its headquarters.

12

61. As Social Media Manager for Merchandise, Plaintiff seldomly interacted with executives and supervised no employees. In this role, Plaintiff worked remotely from her home even though she lived minutes from the corporate headquarters because she was provided with no office at headquarters. The Social Media Manager for Merchandise did not directly report to the CEO.

62. Plaintiff went from her Verticals position, developing and directing creative initiatives for MrBeast, managing a team of employees, responsible for a production budget of approximately $500,000.00 per month with a private office at headquarters—to an isolated, middle-manager position in the struggling and unpopular Merchandise division, with no direct reports, and a minimal budget.

**Pregnancy/FMLA Leave**

63. Plaintiff was working as Social Media Manager for Merchandise when she informed her supervisor in January 2025 that she was pregnant and would need to take leave for the birth of her child.

64. Plaintiff was concerned about how MrBeast would take the news of her pregnancy due to their prior treatment of her and its handling of issues specific to women. *See supra*, ¶¶ 52-62.

65. Plaintiff was unaware of any other MrBeast employee taking maternity leave prior to her request, and upon information and belief, Plaintiff was the first female employee of MrBeast to ask for maternity leave benefits.

66. MrBeast did not have a standard practice of providing information to employees about their FMLA rights when Plaintiff informed MrBeast of her need for leave in January 2025.

67. After informing her managing supervisor of her need for leave in 2025, MrBeast failed to give Plaintiff a written notice of her rights and responsibilities under the FMLA, as required by 29 C.F.R. § 825.300(c).

68. Nor did MrBeast give Plaintiff notice of her eligibility under the FMLA or a designation notice, as required by 29 CFR §§ 825.300(b)-(d).

69. Upon information and belief, MrBeast did not have a policy or disregarded its policies about not having employees on leave, including leave protected under the FMLA, to perform work-related duties.

70. On March 31, 2025, Plaintiff gave birth.

71. Plaintiff informed her supervisor that it was a difficult experience and that her baby required a stay in the neonatal intensive care unit. Notwithstanding, shortly thereafter and throughout April, 2025, with full knowledge that Plaintiff was on leave to care for herself and her newborn, Plaintiff was asked by her supervisor to work on MrBeast's upcoming Naruto collection product launch. Plaintiff worked on this product launch continuously during the month of April.

72. On April 24, 2025, Plaintiff was asked by her supervisor to manage an exhibition booth at a town hall event which required long periods of standing, physical work (such as cleaning and setting up displays), and required her to be away from her newborn for approximately 10 hours, three weeks after giving birth.

73. In May 2025, a producer for MrBeast contacted Plaintiff to work on a video production that involved a professional soccer player, Neymar, to be shot in Brazil. The work required Plaintiff to participate in numerous calls with Neymar's team and the Brazilian consulate. MrBeast suffered and permitted Plaintiff to travel to Brazil to work the Neymar video shoot.

14

74. MrBeast failed to provide Plaintiff with required information that would inform her of her rights under the FMLA.

75. MrBeast required Plaintiff perform substantial and continuous work over approximately an 8-week period. During this time, Plaintiff was in pain, healing from a complex birth, not sleeping at night, and up working for MrBeast during the day.

76. Plaintiff feared retaliation by MrBeast and other negative consequences on her employment if she refused to work during her FMLA leave. Indeed, Plaintiff was on a work conference call while in the labor and delivery room.

77. In its Handbook, "How to Succeed In MrBeast Production," MrBeast informs employees they are expected to get the job done at any personal cost and no excuse is acceptable.[6] It tells employees, "[t]he [a]mount of hours [you] work is irrelevant;" "[w]e pivot a lot, be ready to have everything flipped on its head at a moment's notice;" "[w]ork with intensity;" "[p]ush outwards, not inwards;" and "[p]ull all nighters . . . ."[7]

78. Plaintiff received the Handbook, which employees referred to as "The Beast Bible," when she was hired. She knew if she did not continue to grind and get work done, as asked by MrBeast managers and expected by MrBeast, she would not have a job to return to after her leave.

79. MrBeast caused Plaintiff to lose bonding time with her newborn and caused her additional mental and physical health decline.

80. Because of work she was required to perform during her FMLA-approved leave, Plaintiff used vacation time she had not planned to use during her time off.

---

[6] How to Succeed In MrBeast Production at 4.
[7] *Id*. at 23-24.

**Termination**

81.     Less than three weeks after Plaintiff's full time return to work following FMLA and pregnancy-related leave, MrBeast terminated Plaintiff's employment.

82.     On November 6, 2025, Plaintiff was informed by her managing supervisor and Human Resources that the position she held with MrBeast was being eliminated.

83.     Plaintiff was told that she was "too high caliber" for the Social Media Manager for Merchandise role that MrBeast had demoted and transferred her to after she complained about sexual harassment and a hostile work environment.

84.     Plaintiff's termination was not because she was not qualified or was not meeting the expectations for her position.

85.     Plaintiff was not offered another position at MrBeast and instead was offered a severance agreement with the release of her employment claims and confidentiality provisions.

86.     Plaintiff declined the severance agreement despite MrBeast's attempts to leverage medical coverage for her newborn to coerce Plaintiff into signing.

87.     Plaintiff notified MrBeast on November 18, 2025 that she believed her termination was unlawful.

88.     Upon information and belief, MrBeast hired a male to perform duties previously performed by Plaintiff as Social Media Manager.

**Impact on Plaintiff's Mental Health**

89.     Plaintiff has suffered severe emotional distress as a result of MrBeast's actions.

90.     Plaintiff was diagnosed with severe depression and anxiety during her employment with MrBeast. The cause or proximate cause of her severe depression and anxiety were the unlawful discriminatory and retaliatory actions of MrBeast.

16

91. Because of MrBeast's conduct and the adverse employment actions it has taken against her, Plaintiff has suffered mental anguish, humiliation, embarrassment, suicidal ideation, loss of enjoyment of life, and damage to her emotional and psychological well-being.

92. Plaintiff suffered episodes of anxiety and depression and has required ongoing psychiatric treatment and medication due to the harm caused by MrBeast.

***

93. MrBeast's termination of Plaintiff was motivated by her vocal opposition to sexual harassment and a hostile workplace, her sex, and her exercise of FMLA rights as a new mother.

94. The adverse actions taken against Plaintiff by Defendants, as described in this complaint, were willful and in reckless disregard of her federally and state protected rights.

95. The adverse actions taken against Plaintiff by Defendants, as described in this complaint, were extreme and outrageous.

96. The adverse actions taken against Plaintiff by Defendants, as described in this complaint, were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's sex and human rights.

97. Due to Defendants' violations of law, Plaintiff seeks her damages, including, lost wages, loss benefits, reinstatement or front pay, liquidated damages under the FMLA, injunctive relief, and compensatory damages and punitive damages as deemed appropriate under North Carolina law.

## VI. CAUSES OF ACTION

### COUNT I
### FMLA Interference In Violation of 29 U.S.C. §§ 2601 *et seq.*

98. Plaintiff repeats and realleges the allegations contained in paragraphs 1-19, 21-25, 28-88, 93, 94, and 97, above as if fully set forth herein.

17

99. As of March 31, 2025, the date of the birth of her child, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), having been employed by Defendants for more than 12 months and having performed more than 1,250 hours of service.

100. At all Relevant Times, Defendants were "employers" within the definition of FMLA, 29 U.S.C. § 2611(4)(A), employing more than 50 employees within 75 miles of Plaintiff's worksite in Greenville, North Carolina.

101. Defendants did not provide Plaintiff with notice of her FMLA rights and responsibilities as required by 29 CFR § 825.300(c).

102. Defendants did not provide Plaintiff with notice of her FMLA eligibility pursuant to 29 CFR § 825.300(b).

103. Defendants did not provide Plaintiff with notice of her FMLA designation pursuant to 29 CFR § 825.300(d).

104. Plaintiff provided advance notice to Defendants that she would need leave for the birth of her child, an FMLA-qualifying event.

105. Plaintiff took leave from work for an FMLA-qualifying reason beginning on March 31, 2025.

106. Plaintiff was entitled and eligible for FMLA protection when she took leave from work for the birth of her child beginning on March 31, 2025.

107. Defendants interfered with Plaintiff's rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1) by suffering, permitting, and/or requiring Plaintiff to perform work during her FMLA leave and terminating her in close proximity to the time that she exercised her FMLA rights.

18

108. Defendants' conduct was willful because Defendants knew or should have known that its conduct was done with reckless disregard or indifference as to whether it was in violation of the FMLA.

109. Defendants do not have reasonable grounds for believing that their acts or omissions were in good faith or not in violation of the FMLA.

110. As a direct and proximate result of Defendants' unlawful interference with Plaintiff's FMLA rights, Plaintiff is entitled to lost wages and benefits, liquidated damages, reinstatement and/or front pay, and reasonable attorneys' fees and costs.

## COUNT II
## FMLA Retaliation In Violation of 29 U.S.C. §§ 2601 *et seq.*

111. Plaintiff repeats and realleges the allegations contained in paragraphs 1-19, 21-25, 28-88, 93, 94, and 97, above as if fully set forth herein.

112. At all Relevant Times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), having been employed by Defendants for more than 12 months and having performed more than 1,250 hours of service.

113. At all Relevant Times, Defendants were "employers" within the definition of FMLA, 29 U.S.C. § 2611(4)(A), employing more than 50 employees within 75 miles of Plaintiff's worksite in Greenville, North Carolina.

114. Defendants retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2).

115. During the Relevant Period, Plaintiff exercised her rights under the FMLA.

116. Defendants retaliated against Plaintiff for exercising her FMLA rights by terminating her employment on November 6, 2025.

117. The termination of Plaintiff's employment was an adverse employment action.

19

118. The temporal proximity between Plaintiff's return from FMLA-related leave and her termination establishes a causal connection between her exercise of FMLA rights and the adverse action.

119. The close temporal proximity between Plaintiff's exercise of her rights under the FMLA and her termination gives rise to an inference of retaliation.

120. Defendants' reason for terminating Plaintiff was pretextual.

121. Defendants' retaliatory conduct was willful because Defendants knew or should have known that its conduct was done with reckless disregard or indifference as to whether it was in violation of the FMLA.

122. Defendants do not have reasonable grounds for believing their acts or omissions were in good faith and not in violation of the FMLA.

123. As a direct and proximate result of Defendants' unlawful retaliation motivated by Plaintiff's exercise of her FMLA rights, Plaintiff is entitled to lost wages and benefits, liquidated damages, reinstatement or front pay, and reasonable attorneys' fees and costs.

## COUNT III
### Intentional Infliction of Emotional Distress Pursuant to North Carolina Common Law

124. Plaintiff repeats and realleges the allegations contained in paragraphs 1-20, 23-25, 29-32, 34, and 36-97, as if fully set forth herein.

125. Defendants engaged in extreme and outrageous conduct when demoting and transferring Plaintiff after she complained about sexual harassment and a hostile work environment.

126. Defendants engaged in extreme and outrageous conduct when requiring Plaintiff to work during her maternity leave and terminating Plaintiff's employment less than three weeks after she returned from FMLA and pregnancy-related leave for pretextual reasons.

20

127. Defendants' conduct was the proximate cause of Plaintiff's severe emotional distress and mental health issues.

128. Defendants intentionally caused severe emotional distress to Plaintiff. Alternatively, Defendants acted with reckless indifference to the probability that their conduct would cause Plaintiff severe emotional distress.

129. Defendants knew that their conduct would cause Plaintiff severe emotional harm.

130. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress.

131. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income and benefits and is entitled to recover compensatory damages for harms suffered in an amount to be determined at trial.

132. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's gender and human rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

### COUNT IV
### Wrongful Discharge in Violation of North Carolina Public Policy

133. Plaintiff repeats and realleges the allegations contained in paragraphs 1-20, 23-25, and 28-97 as if fully set forth herein.

134. Defendants employed at least fifteen (15) employees at all Relevant Times.

135. North Carolina recognizes a public policy exception to the at-will employment doctrine that prohibits employers from terminating employees for reasons that violate clearly established public policy.

21

136. North Carolina has a clearly established public policy against discrimination based on sex, as reflected in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.

137. North Carolina has a clearly established public policy against retaliation for opposing discriminatory employment practices, as reflected in N.C. Gen. Stat. § 143-422.3.

138. Plaintiff was terminated for reasons that directly violate North Carolina's clearly established public policies.

139. Defendants' termination of Plaintiff was motivated by her opposition to discrimination based on her sex and discrimination because of her sex.

140. Defendants violated the public policy of North Carolina as set forth in N.C. Gen. Stat. § 143-422.2 by terminating Plaintiff for unlawful and discriminatory reasons, including her sex.

141. Defendants' termination of Plaintiff directly contravenes North Carolina's public policy against sex discrimination and retaliation for opposing unlawful employment practices.

142. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income and benefits and is entitled to recover compensatory damages for harms suffered in an amount to be determined at trial.

143. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's gender and human rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

22

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants and the following relief:

A. A declaratory judgment that Defendants violated the FMLA, 29 U.S.C. §§ 2601 *et seq*., and North Carolina public policy;

D. An award of back pay for lost wages and benefits;

G. An award of liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii), in an amount equal to the sum of back pay and lost benefits;

H. An order reinstating Plaintiff to her former position as COO for Verticals or equivalent; or, in the alternative, an award of front pay in lieu of reinstatement;

I. An award of compensatory damages under North Carolina law;

H. An award of punitive damages under North Carolina law;

I. An award of reasonable attorneys' fees and costs pursuant to the FMLA and other applicable statutes;

J. An award of pre-judgment interest;

K. An award of post-judgment interest; and

M. Injunctive relief and such other and further equitable relief as the Court deems just and proper.

Dated: April 22, 2026       Respectfully Submitted,

               /s/ Rebecca Mayer
               **THE NOBLE LAW FIRM PLLC**
               Rebecca Mayer
               NC Bar No. 64348
               bmayer@thenoblelaw.com
               700 Spring Forest Rd, Suite 205
               Raleigh, NC 27609
               (919) 251-6008

23

Fax (919) 869-2079

**VALLI KANE & VAGNINI LLP**
James A. Vagnini
(*Special Appearance Forthcoming*)
New York Bar No. 2958130
jvagnini@vkv.law
Loren B. Donnell
(*Special Appearance Forthcoming*)
Florida Bar No. 13429
ldonnell@vkv.law
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180

**ATTORNEYS FOR PLAINTIFF**