LORRAYNE MAVROMATIS,   )
Plaintiff,        )
           )  Civil Action No.  4:26-cv-00059-M
v.          )
           )
MRBEASTYOUTUBE, LLC and  )
GAMECHANGER 24/7, LLC,   )
Defendants.       )

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendants MrBeastYouTube, LLC ("MBYT") and GameChanger 24/7, LLC ("GameChanger"), by and through undersigned counsel, hereby answer the Complaint filed by Plaintiff Lorrayne Mavromatis and assert their affirmative defenses as follows.  Except as expressly admitted below, Defendants deny each and every allegation contained in the Complaint. Defendants further deny that Plaintiff is entitled to any of the relief she seeks, including any damages, equitable relief, attorneys' fees, or costs.

## PRELIMINARY STATEMENT

Plaintiff is a social media influencer who filed this lawsuit to gain publicity by leveraging one of the most recognized YouTube creators in the world.  Plaintiff, who now has one million followers on Instagram, launched and promoted her lawsuit with a media blitz that included interviews with NBC, New York Magazine, the Associated Press, the New York Times, and an Instagram post. Plaintiff has also made a series of demonstrably false allegations, including that she worked as an executive in a "C-suite level" role at the company.  Only after she had completed her media tour did Plaintiff assert, without a hint of irony, that she will "let the legal process speak for itself now."  It is revealing that for all of her complaints about the company's culture, the relief

Plaintiff seeks in this lawsuit includes a request for "reinstatement" to her position with the company.

The truth is the opposite of what Plaintiff has stated, both publicly on her media tour and in this complaint. When she raised issues, the company investigated.[1] And when she made requests, the company accommodated them—from her request to change roles to gain experience in other parts of the business, to her request to go to her native Brazil for a photo shoot with the international soccer star Neymar while on parental leave, to her request to extend her leave to account for that trip. Throughout all of this, Plaintiff was attempting to brand herself as an influencer and hard-charging executive, including by referring to herself as the "COO" of the company's Verticals division (a title and role that did not exist) and posting videos to Instagram, such as a video in which Plaintiff claims she was "giving directions to my team" from the delivery room and adding, "HAHAHAHA—so let's just say I worked literally until the very last second." In reality, Plaintiff participated in that meeting on her own accord, with no instruction or expectation from the company to do so.

At bottom, Plaintiff's termination was a lawful business decision that was unrelated to her gender, her parental leave, or raising of any issues with human resources. It was simply the result of hard choices the company had to make to restructure a specific business that was underperforming. Like others, *male and female* (including the male former CEO of the division), Plaintiff's position was eliminated to increase organizational efficiency and lower costs. The new executive who oversaw the restructuring and made those difficult personnel decisions harbored no ill will toward Plaintiff, or any of the other men and women he let go at that same time. Plaintiff's allegations do not change these facts. They ignore them.

---

[1] It is notable that when the company previously launched an investigation into company culture in 2024, Plaintiff did not share any of the alleged concerns outlined in the complaint.

2

The history of Plaintiff's parental leave underscores these points. Contrary to her assertions, the company informed Plaintiff of her entitlement to parental leave under the FMLA, which is outlined in the company's Employee Handbook (the actual handbook, as opposed to what her Complaint mischaracterizes as such) that she acknowledged receiving.

I have received the MrBeast Employee Handbook.

Lorrayne Mavromatis

03/27/2025

Likewise, the company did not insist, or even request, that Plaintiff travel to Brazil while on parental leave. Whether it was for the opportunity to return to her native Brazil, to meet Neymar, or to portray herself as indispensable, Plaintiff actively lobbied to travel to Brazil, telling others that she would be "extremely valuable" to the team:

[5/13/25, 7:10:38 PM] Lorrayne Mavromatis: There are so many moving parts to this - specially being in less than 48h😳

Despite being on maternity leave I feel like it would be extremely valuable to go with you to make sure everything works out smoothly and to have a Brazilian citizen on the ground with yall for any last min things that may arise - specially with his team. How would the logistic work though? Would there be a seat available on the jet for me?

Plaintiff happily participated, working energetically and excited to meet Neymar.



After the shoot ended and the crew returned home, Plaintiff stayed behind and, on information and belief, visited with family living in Brazil. When Plaintiff asked to extend her parental leave to account for the time she spent in Brazil, the company agreed without hesitation.

What remains of Plaintiff's complaint are hostile work environment allegations for a claim she foreshadows but does not yet bring. That unasserted claim appears to center on conduct of former employees who left the company years ago after a well-publicized 2024 culture review ordered by the company's current management team to help the rapidly growing company evolve into what it is today. Any claims Plaintiff may try to assert about the company's former managers are, however, time-barred under Title VII.

## RESPONSE TO INDIVIDUAL ALLEGATIONS

Defendants respond to the numbered paragraphs of the Complaint and deny Plaintiff's argumentative subheadings. Except where specifically admitted, Defendants deny the entirety of the Complaint.

4

1. Paragraph 1 contains Plaintiff's characterization of her lawsuit and legal conclusions to which no response is required. To the extent a response is required, Defendants deny that they committed any violation of federal or state law, deny any wrongdoing, and deny that Plaintiff is entitled to any relief.

2. Paragraph 2 states Plaintiff's prayer for relief and legal conclusions to which no response is required. To the extent a response is required, Defendants deny that they committed any willful or intentional violation of any law and deny that Plaintiff is entitled to any of the relief requested.

3. Admitted that Plaintiff was employed by MBYT from on or about August 22, 2022 until her employment ended on November 6, 2025. Defendants deny any remaining allegations or implications in Paragraph 3.

4. Defendants admit that James "Jimmy" Donaldson is a social media personality who publishes content under the name "MrBeast" and is widely popular with many demographics, including but not limited to males age 14 to 24. Defendants also admit that Mr. Donaldson is a founder of MBYT and GameChanger, which are subsidiaries of Beast Industries, Co., and that their business include BeastGames, MrBeast Burger, Lunchly, Feastables, Step, and ViewStats. Defendants further admit that Mr. Donaldson's content includes large-scale challenges and philanthropic endeavors. Defendants deny all remaining characterizations and allegations in Paragraph 4.

5. Defendants admit that Mr. Donaldson began posting videos on YouTube as a teenager, that his channel grew substantially, and that he later devoted himself to the business full-time. Defendants also admit that Susan Parisher, who is Mr. Donaldson's mother, has worked for

5

MBYT.  Defendants deny any remaining allegations of Paragraph 5 and deny any implication of impropriety.

6.     Defendants admit that the MrBeast-affiliated businesses have grown significantly over the past decade, including in subscriber base and commercial partnerships.  Defendants deny all remaining characterizations and allegations in Paragraph 6.

7.     Defendants admit that the MrBeast-affiliated businesses collectively employ more than 500 employees.  Defendants deny the remaining allegations of Paragraph 7.

8.     Denied.

9.     Denied.

10.     Denied.

11.     Defendants admit that Plaintiff was hired by MBYT in August 2022.

12.     Defendants admit that Plaintiff received promotions and title changes during her first year of employment.  Defendants deny all remaining allegations of Paragraph 12.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Defendants admit that Plaintiff raised internal concerns that were investigated and she was told her claims were unsubstantiated.  Defendants admit that Plaintiff's employment ended on November 6, 2025.  Defendants deny all remaining allegations of Paragraph 16.

17.     Admitted that Defendants posted openings for social-media-related positions from time to time and that Plaintiff was offered a generous severance agreement following the end of her employment.  Defendants deny all remaining allegations of Paragraph 17.

18. The letter referenced in Paragraph 18 speaks for itself, and Defendants deny any characterization inconsistent with its terms. Defendants deny all remaining allegations of Paragraph 18.

19. Paragraph 19 states a legal conclusion regarding subject matter jurisdiction to which no response is required.

20. Paragraph 20 states a legal conclusion to which no response is required.

21. Paragraph 21 states a legal conclusion to which no response is required.

22. Paragraph 22 states a legal conclusion to which no response is required.

23. Paragraph 23 states a legal conclusion to which no response is required.

24. Paragraph 24 states a legal conclusion to which no response is required.

25. Paragraph 25 states a legal conclusion to which no response is required.

26. Defendants admit that Plaintiff filed a charge with the EEOC that purports to have been filed on December 29, 2025. Defendants deny that they engaged in any discrimination, retaliation, or wrongdoing.

27. Defendants lack knowledge or information sufficient to form a belief as to whether the EEOC has issued a Notice of Right to Sue and therefore deny the allegations of Paragraph 27. Defendants reserve all rights and defenses with respect to any future amendment of the Complaint.

28. Paragraph 28 states a legal conclusion to which no response is required.

29. Defendants admitted that Plaintiff is a former employee of MBYT. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's current residence and therefore deny that allegation.

30. Admitted.

31. Paragraph 31 states a legal conclusion to which no response is required.

7

32. Defendants admit that MBYT is a limited liability company organized under the laws of North Carolina. The remaining allegations in Paragraph 32 state a legal conclusion to which no response is required.

33. Paragraph 33 states a legal conclusion to which no response is required. To the extent a response is required, admitted that MBYT meets the numerical threshold to qualify as an "employer" under the FMLA.

34. Defendants admit that GameChanger is a limited liability company organized under the laws of North Carolina. The remaining allegations in Paragraph 34 state a legal conclusion to which no response is required.

35. Paragraph 35 states a legal conclusion to which no response is required.

36. The first sentence of Paragraph 36 states a legal conclusion to which no response is required. Denied as stated. Defendants admit that GameChanger's business focuses on merchandise, that MBYT's business focuses on video production, and Plaintiff was maintained on MBYT's payroll through her termination, and that MBYT provided Plaintiff benefits. Defendants deny all remaining allegations of Paragraph 36.

37. Denied.

38. Defendants admit that during Plaintiff's employment, Defendants had operations in Greenville, North Carolina.

39. Denied.

40. Paragraph 40 states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that GameChanger's business focuses on merchandise and that MBYT's business focuses on digital media content.

41. Paragraph 41 states a legal conclusion to which no response is required.

8

42. Defendants admit that Plaintiff was hired by MBYT on or about August 22, 2022 and that her initial title related to Instagram content. Defendants deny any remaining characterizations.

43. Defendants admit that Plaintiff received compensation adjustments and title changes as referenced, although Defendants deny the precise sequence and characterization to the extent inconsistent with Defendants' records, which speak for themselves. Defendants deny any remaining allegations.

44. Defendants admit that Plaintiff held responsibilities in connection with MrBeast's Verticals division during the period referenced. Defendants deny Plaintiff's characterization of her scope of authority, team size, and budget to the extent inconsistent with Defendants' records and deny any remaining allegations.

45. Defendants admit that Verticals produced content that reached significant audiences. Defendants deny the remaining allegations as stated and specifically deny any implication that the results were attributable solely to Plaintiff.

46. Denied.

47. Defendants admit that during her employment, Plaintiff made complaints about how she was treated by her supervisors.

48. Defendants admit that Plaintiff filed a complaint about a male supervisor that was investigated, including by interviewing Plaintiff who stated that the supervisor treated men and women the same. Defendants also admit that Plaintiff made complaints about MBYT's former employee James Warren after he had left the company. Plaintiff's allegations were investigated and not substantiated. On that basis, they are denied.

9

49. Defendants admit that Plaintiff made complaints about Mr. Warren after he had left the company and that from time to time, Warren held meetings with men and women at his residence. Defendants lack information as to what Plaintiff wore to work at any point during her employment and therefore deny the allegations in the last sentence of Paragraph 49, including any suggestion that she was wrongfully or discriminatorily treated. Defendants deny all remaining allegations of Paragraph 49, including that the statement attributed to Mr. Warren in Paragraph 49 is true.

50. Denied.

51. Defendants admit that Plaintiff made complaints about Mr. Warren after he had left the company, but deny the remaining allegations in Paragraph 51.

52. Defendants admit that in or about November 2023 Plaintiff raised internal concerns to Ms. Parisher. Defendants deny Plaintiff's characterization of the content of those concerns, deny that the concerns described actual harassment or a hostile work environment, and deny any remaining allegations of Paragraph 52.

53. Denied.

54. Defendants admit that Ms. Parisher informed Plaintiff that her complaints would be investigated. Defendants deny any remaining allegations in Paragraph 54.

55. Defendants admit that Plaintiff's allegations were not substantiated, and that around this time she was transferred, at her request, to lead social media for GameChanger. Defendants deny the remaining allegations in Paragraph 55.

56. Denied.

57. Denied.

58. Denied.

10

59. Denied.

60. Denied.

61. Defendants admit that Plaintiff principally worked at home in her social-media-related role for GameChanger and that she did not report directly to the CEO. Defendants deny all remaining allegations in Paragraph 61, including the implication that Plaintiff was demoted.

62. Denied.

63. Denied.

64. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's subjective concerns and on that basis deny Paragraph 64. Defendants deny that there was any legitimate basis for any such concern.

65. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's awareness of other employees and therefore deny the allegations. Defendants deny that Plaintiff was the first female employee to request maternity leave.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Defendants lack knowledge or information sufficient to form a belief as to the specific date of Plaintiff's delivery.

71. Defendants lack information to respond to the first sentence of Paragraph 71 concerning discussions between Plaintiff and her supervisor, who is a former employee, and therefore deny them. Defendants deny the remaining allegations in Paragraph 71.

72. Denied.

73. Denied. Plaintiff sought out and lobbied to be included on the video production with Neymar, including the opportunity to travel to her native Brazil.

74. Denied.

75. Denied. Defendants deny that they required Plaintiff to perform substantial or continuous work over any 8-week period of FMLA leave, and lack knowledge or information sufficient to form a belief as to Plaintiff's subjective physical condition.

76. Denied as stated. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's subjective fears and on that basis deny the allegation, including that any such fears were justified or that Defendants required or expected Plaintiff to perform any work while in labor.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Defendants admit that Plaintiff's employment ended on November 6, 2025. Defendants deny that the termination was retaliatory, discriminatory, or otherwise unlawful, and deny Plaintiff's characterization of the timing relative to her return from leave.

82. Defendants admit that Plaintiff was informed on November 6, 2025 that her position was being eliminated.

83. Denied.

84. Defendants admit that Plaintiff's termination was not for cause and deny any remaining characterizations in Paragraph 84.

12

85. Defendants admit that Plaintiff was not offered another position and was offered a severance agreement in connection with the elimination of her position, which included generous severance pay and other terms, including a release and a confidentiality provision. Defendants deny any implication that the offer was improper.

86. Defendants admit that Plaintiff declined the severance agreement. Defendants deny that they attempted to "leverage" or "coerce" Plaintiff in any respect.

87. Defendants admit that Plaintiff communicated her view that her termination was unlawful on or about November 18, 2025. Defendants deny that the termination was unlawful.

88. Denied.

89. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's subjective emotional state and deny that any action of Defendants caused Plaintiff emotional distress.

90. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's medical diagnoses and therefore deny the allegations. Defendants deny that any conduct of Defendants was the cause or proximate cause of any medical condition.

91. Denied. Defendants deny that they engaged in any unlawful conduct or caused Plaintiff any of the harms alleged.

92. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's treatment and medication and therefore deny the allegations. Defendants deny causation.

93. Denied. Defendants deny that the termination was motivated by any protected characteristic or protected activity.

94. Denied.

95.     Denied.

96.     Denied.

97.     Paragraph 97 states a prayer for relief and legal conclusions to which no response is required. To the extent a response is required, Defendants deny engaging any violation of law or that Plaintiff is entitled to any relief.

## COUNT I — FMLA Interference

98.     Defendants incorporate their responses to the paragraphs referenced as if fully set forth herein.

99.     Paragraph 99 states a legal conclusion to which no response is required.

100.    Paragraph 100 states a legal conclusion to which no response is required.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Defendants admit that Plaintiff provided notice of desire to take maternity leave. The remaining allegations in Paragraph 104 state a legal conclusion to which no response is required.

105.    Denied.

106.    Paragraph 106 states a legal conclusion to which no response is required.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied. Defendants deny engaging in any wrongdoing and that Plaintiff is entitled to any relief.

14

## COUNT II — FMLA Retaliation

111. Defendants incorporate their responses to the paragraphs referenced as if fully set forth herein.

112. Paragraph 112 states a legal conclusion to which no response is required.

113. Paragraph 113 states a legal conclusion to which no response is required.

114. Denied.

115. Paragraph 115 states a legal conclusion to which no response is required.

116. Denied.

117. Paragraph 117 states a legal conclusion to which no response is required.

118. Paragraph 118 states a legal conclusion to which no response is required. Defendants deny any implication that Plaintiff's termination was caused by her exercising any right under the FMLA.

119. Paragraph 119 states a legal conclusion to which no response is required. Defendants deny any implication that Plaintiff was retaliated against for exercising any right under the FMLA.

120. Denied.

121. Denied.

122. Denied.

123. Denied. Defendants deny engaging in any wrongdoing or that Plaintiff is entitled to any relief.

## COUNT III — Intentional Infliction of Emotional Distress

124. Defendants incorporate their responses to the paragraphs referenced as if fully set forth herein.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied. Defendants specifically deny engaging in any wrongdoing or that Plaintiff is entitled to any relief, including without limitation punitive damages.

### COUNT IV — Wrongful Discharge in Violation of North Carolina Public Policy

133. Defendants incorporate their responses to the paragraphs referenced as if fully set forth herein.

134. Paragraph 134 states a legal conclusion to which no response is required.

135. Paragraph 135 states a legal conclusion to which no response is required.

136. Paragraph 136 states a legal conclusion to which no response is required.

137. Paragraph 137 states a legal conclusion to which no response is required.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied. Defendants specifically deny engaging in any wrongdoing or that Plaintiff is entitled to punitive damages.

16

<u>**Response to Plaintiff's Prayer for Relief**</u>

Defendants deny that Plaintiff is entitled to any relief whatsoever, including any relief requested in subparts A through M of the Prayer for Relief.  Defendants deny each and every allegation not specifically admitted above.

<u>**AFFIRMATIVE AND OTHER DEFENSES**</u>

Without assuming any burden of proof not otherwise imposed by law, and reserving the right to assert additional defenses as discovery proceeds, Defendants assert the following affirmative and other defenses:

**First Affirmative Defense**

The Complaint, in whole or in part, fails to state claims upon which relief may be granted.

**Second Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**Third Affirmative Defense**

At all relevant times, Plaintiff was not entitled to the rights, benefits, or protections alleged under the FMLA, or, alternatively, Defendants fully complied with all obligations imposed by the FMLA and its implementing regulations.

**Fourth Affirmative Defense**

Any actions taken with respect to Plaintiff's employment were based on legitimate, non-discriminatory, and non-retaliatory business reasons unrelated to any actual or alleged exercise of FMLA rights and such business reasons were not pretextual.

17

**Fifth Affirmative Defense**

Plaintiff cannot establish a causal connection between any alleged protected activity and any adverse employment action, and therefore cannot sustain claims for FMLA retaliation, emotional distress, or wrongful discharge.

**Sixth Affirmative Defense**

Defendants did not know or show reckless disregard for whether their conduct was in violation of the FMLA.

**Seventh Affirmative Defense**

Defendants acted at all times in good faith and with reasonable grounds for believing their actions were lawful, thereby barring or limiting recovery of liquidated damages or other relief under the FMLA.

**Eighth Affirmative Defense**

Plaintiff's claim for intentional infliction of emotional distress is barred, in whole or in part, by the exclusivity provisions of the North Carolina Workers' Compensation Act, N.C. Gen. Stat. §§ 97-1 et seq., to the extent Plaintiff seeks damages for injuries arising out of and in the course of her employment.

**Ninth Affirmative Defense**

Plaintiff's allegations do not rise to the level of extreme and outrageous conduct required under North Carolina law, nor do they establish intent, recklessness, or severe emotional distress sufficient to sustain a claim for intentional infliction of emotional distress.

**Tenth Affirmative Defense**

Plaintiff was an at-will employee subject to lawful termination at any time and for any reason not prohibited by law, and no exception to the at-will doctrine applies.

18

## Eleventh Affirmative Defense

Plaintiff cannot identify a clear, specific, or legally cognizable North Carolina public policy that Defendants allegedly violated. Accordingly, Plaintiff's claim for wrongful discharge in violation of public policy fails as a matter of law.

## Twelfth Affirmative Defense

Plaintiff cannot establish that Defendants' actions were malicious, willful or wanton, or in a manner that demonstrates a reckless disregard for Plaintiff's gender and human rights. Thus, Plaintiff is not entitled to punitive damages under North Carolina law.

## Thirteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, and/or laches.

## Fourteenth Affirmative Defense

Plaintiff failed to take reasonable steps to mitigate alleged damages, and any recovery must be reduced accordingly.

## Fifteenth Affirmative Defense

MBYT and GameChanger are separate and distinct legal entities and do not constitute a single integrated enterprise or joint employer for purposes of any claim asserted by Plaintiff. Accordingly, no entity that was not Plaintiff's employer may be held liable for the claims asserted in the Complaint.

## Sixteenth Affirmative Defense

Defendants reserve the right to amend or supplement these Affirmative Defenses as discovery proceeds and additional facts become known.

19

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court:

A. Dismiss the Complaint with prejudice in its entirety;

B. Enter judgment in favor of Defendants on all claims;

C. Deny all relief requested by Plaintiff;

D. Award Defendants their costs and attorneys' fees to the extent permitted by law; and

E. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants demand a trial by jury on all claims and issues so triable.

Dated: April 24, 2026

/s/ Douglas M. Jarrell
Douglas M. Jarrell
N.C. State Bar No. 21138
djarrell@rbh.com

Robert E. Harrington
N.C. State Bar No. 26967
rharrington@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
Facsimile: (704) 378-4000


Felicia H. Ellsworth*
Felicia.Ellsworth@wilmerhale.com

John J. Butts*
John.Butts@wilmerhale.com

Thanithia Billings*
Thanithia.Billings@wilmerhale.com

20

WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Counsel for MrBeastYouTube, LLC and
GameChanger 24/7, LLC*

*Special appearance forthcoming

21